UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **FABRICLEAR, LLC,** )<br>    Plaintiff, )<br> )<br>           v. )<br> )<br>**HARVEST DIRECT, LLC,** )<br>    Defendant. ) | | **CIVIL ACTION**<br>**NO.  20-10580-TSH** |

**MEMORANDUM AND ORDER**
**ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
January 13, 2023

**HILLMAN, S.D.J.**

FabriClear, LLC ("FabriClear") filed this action against Harvest Direct, LLC ("Harvest Direct"), alleging breach of contract, trade secret misappropriation, unjust enrichment, breach of the implied covenant of good faith and fair dealing, false designation of origin, and unfair competition. FabriClear now moves for summary judgment on breach of the Confidentiality Agreement (Count II), unfair competition and false designation of origin (Count V), and unfair competition under Mass. Gen. L. c. 93A, § 11 (Count VI). For the following reasons, the motion is ***granted***.

**Background**

Mark Panagiotes, the owner of FabriClear, developed a bed bug treatment formulation that he called "FabriClear." He found a manufacturer to make the formulation and he designed packaging for the product. In 2013, FabriClear approached Harvest Direct, a direct marketing company that engages in marketing and sales through direct sales and through retailers. Panagiotes' contact at Harvest Direct was Simon George, who at that time was a partial owner.

George executed a non-disclosure agreement on behalf of Harvest Direct on May 31, 2012. According to George, doing so was a common business practice of Harvest Direct for the purpose of evaluating and moving forward with the business relationship. FabriClear decided to partner with Harvest Direct to promote and sell the FabriClear product.

FabriClear and Harvest Direct then entered into a Confidentiality Agreement ("Agreement") in July 2013. The Confidentiality Agreement was signed on behalf of Harvest Direct by George and on behalf of FabriClear by Panagiotes. Both initialed each page of the Agreement. The Confidentiality Agreement was entered into for the stated purpose of allowing FabriClear to disclose FabriClear's "Confidential and Proprietary Information" to Harvest Direct "for the sole and exclusive limited purpose of entering into, and carrying on, discussions regarding and relating to [FabriClear's] products; with a view toward effectuating a contractual relationship regarding same." Agreement at ¶ 1. In executing the Confidentiality Agreement, Harvest Direct "acknowledge[d] and agree[d] that the Confidential Information is proprietary to and a valuable trade secret of [FabriClear] and that any disclosure or unauthorized use thereof will cause irreparable harm and loss to [FabriClear.]" *Id*. at ¶ 2. "Confidential Information" was defined broadly in the Agreement as "any and all information, oral or written… disclosed or made available to the Receiving Party by the Disclosing Party…" and "any and all information whatsoever… disclosed or made available to the Receiving Party by the Disclosing Party, which concerns, relates, or appertains in any way, manner, or degree to any aspect of said matters or to any aspect of the Disclosing Party's business and/or products, shall be included in and mean 'Confidential Information.'" *Id*.

The Agreement precluded Harvest Direct from using any confidential information of FabriClear other than for the purpose of entering into and carrying on communications towards effectuating a contractual relationship between the two. *Id*.  The Agreement also specifically

precluded Harvest Direct from directly or indirectly contacting any of the people or business entities learned of through FabriClear's confidential disclosures. *Id*. at ¶ 4. The Confidentiality Agreement had a term of ten years and thus remains in effect today. Agreement at ¶ 12.

FabriClear proceeded to share information with Harvest Direct concerning the formulation of the FabriClear Product, the sourcing of the product, the regulatory approvals for the product, advertising, packaging material, marketing strategies and sales results pursuant to the terms of the Agreement. The parties then negotiated for Harvest Direct to market and sell the FabriClear Product. FabriClear prepared a written License Agreement summarizing the terms of their contract. Among other things, that agreement gave Harvest Direct an exclusive license to market and sell the FabriClear Product and to use FabriClear's "trademarks, trade names, copyrights, trade secrets, technical data, information, know-how, formulas, and other intellectual property rights" while doing so. In exchange for this license, Harvest Direct committed to paying FabriClear royalties, calculated as set percentage of sales during each calendar month. The royalty was to be 50% of the profits from direct response sales, and 10% of adjusted gross revenues for all other US sales, including retail, catalog, and home shopping channels.

The License Agreement was fully prepared in writing but was never signed. The two businesses proceeded however, as though the agreement was in effect. Harvest Direct bought formula from FabriClear, bottled and sold it, and paid FabriClear the royalties contemplated by the License Agreement.

In 2015, Harvest Direct president and co-owner, Simon George, left the company. George had been Panagiotes' primary contact at Harvest Direct. No one at Harvest Direct raised any issue regarding the validity of the either the Confidentiality Agreement or the License between Harvest Direct and FabriClear at that time, and the parties continued to operate in accordance with both. For the first few years, sales of the FabriClear Product were strong.

Towards the end of 2018, however, sales declined. FabriClear stopped receiving royalty payments from Harvest Direct and ultimately, Panagiotes ended the business relationship in an email in December 2018.

Harvest Direct admits that it then began to sell the FabriClear product and (initially) did not source its own product. It repackaged existing bottles of FabriClear Product under the X-Out label and sold the FabriClear Product with an X-Out labeling applied over the FabriClear labeling. Harvest Direct then purchased bed bug product directly from FabriClear's suppliers and utilized similar labels for its product bearing the yellow, red and green color scheme, wording and imagery as that of the FabriClear label. The label for the X-Out Product lists the same ingredients as the label for the FabriClear Product, and the packaging for the two products is similar:



Harvest Direct, continues to market and selling its X-Out Product and while the Harvest Direct website still purports to offer the FabriClear Product, it lists the FabriClear Product as "out of stock." FabriClear filed suit in this Court on March 24, 2020.

**Standard of Review**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[ ] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

*Count II – Breach of the Confidentiality Agreement*

Count II asserts a breach of contract claim relative to the Confidentiality Agreement. FabriClear alleges that the parties entered into a contract when they executed the Confidentiality Agreement and that this contract required Harvest Data to protect FabriClear's confidential information and only use that information for purposes contemplated by the Agreement. They further allege that Harvest Direct breached these terms by misusing FabriClear's confidential information to develop a competing product. Harvest Direct argues that following the email in

December 2018 from Panagiotes ending the business relationship, it no longer had an obligation under the Agreement regarding the confidential information.

To establish a prima facie case of breach of contract, a plaintiff must show "(1) the existence of a valid and binding contract; (2) that plaintiff has complied with the contract and performed his own obligations under it; and (3) breach of the contract causing damages." *Persson v. Scotia Prince Cruises, Ltd.,* 330 F.3d 28, 34 (1st Cir. 2003). The material facts are not in dispute with regard to the existence, purpose, and extent of the Agreement. Harvest Direct concedes that it entered into the Agreement and that it received information from FabriClear, including the formulation for the product and was made aware of the manufacturers of the product. Harvest Direct also admitted to labelling its "X-Out" product, listing the same formulation as the FabriClear formulation that was obtained under the Agreement, and to applying "X-Out" labels over the labels of the FabriClear Product. Harvest Direct also does not dispute that it purchased raw materials from the third-party manufacturers that FabriClear had previously utilized, information that was only disclosed to Harvest through its Agreement and business dealings with FabriClear. The discontinuance of the business relationship in December 2018 did not terminate the Agreement.

To the extent that Harvest Direct argues that it was not obligated to keep confidential any disclosures made by FabriClear prior to the execution of the Agreement, the Court disagrees. First, before FabriClear disclosed any information to Harvest Direct, FabriClear had Simon George execute a non-disclosure agreement. The NDA was executed on May 31, 2012 and according to George, was a common business practice of Harvest Direct "solely for the purpose of evaluating and conducting the [r]elationship and not for any other purpose." Also, the Agreement and NDA notwithstanding, Harvest Direct had an implied duty of confidentiality that arose from the nature of the dealings between it and FabriClear. "While the existence (or

6

nonexistence) of an agreement to hold business information in confidence is an important factor in assessing the reasonableness of a party's actions, the law does not define the scope of a confidential relationship by looking exclusively to the parties' express agreements." *Repat, Inc. v. IndieWhip, LLC*, 281 F. Supp. 3d 221, 229 (D.Mass. 2017) (internal quotation marks and citations omitted). "A confidential relationship generally arises by operation of law from the affiliations of the parties and the context in which the disclosures are offered." *Burten v. Milton Bradley Co.*, 763 F.2d 461, 463 (1st Cir. 1985). Accordingly, "a confidential relationship typically will be implied where disclosures have been made in business relationships between employers and employees." *Id*. Accordingly, summary judgment as to Count II for breach of contract as to the Confidentiality Agreement is granted to FabriClear.

*Count VI – Unfair Competition and False Designation of Origin*

Count VI asserts a claim of unfair competition and false designation of origin under the Lanham Act, 15, U.S.C. § 1125(a), based on Harvest Direct's sale and marketing of the X-Out Product. In support, FabriClear alleges that Harvest Direct "offered for sale and has sold" FabriClear Product under the X-Out trademark. Specifically, FabriClear asserts that Harvest Direct repackaged existing bottles of FabriClear Product under the X-Out label and sold them as X-Out Product.

The Lanham Act prohibits false and misleading descriptions of products and services in interstate commerce. *See* 15 U.S.C. § 1125(a). "The statute was designed to protect consumers and competitors from any duplicitous advertising or packaging which results in unfair competition." *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310 (1st Cir.2002) (*citing* 15 U.S.C. § 1125(a)). "Under Section 43(a), individuals may not falsely misrepresent the origin of goods, whether it be the geographic area, the source, or the manufacturer of the physical 'good' sold to the public." *Blake v. Prof'l Coin Grading Serv.*, 898

F. Supp. 2d 365, 382 (D.Mass. 2012) (*citing Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) ).

FabriClear argues that Harvest Direct falsely designated the origin of the X-Out product by "reverse passing off." A reverse passing off claim requires: "(1) that the [product] at issue originated with the plaintiff; (2) that [the] origin of the [product] was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 131 (2d Cir. 2004); *see also, e.g., Syngenta Seeds, Inc. v. Delta Cotton Coop., Inc.*, 457 F.3d 1269, 1277 (Fed. Cir. 2006) (same). "[A]n entity makes a false designation of origin sufficient to support a reverse passing off claim … where it falsely represents… that it has manufactured the tangible product that is sold in the marketplace when it did not in fact do so." *Dastar Corp. v. Twentieth Century Fox Film* Corp., 539 U.S. 23, 28 n.1.

Here, Harvest Direct admits that it took the FabriClear Product, applied a new "X-Out" label over the FabriClear label, and sold the Product to the public as though it originated with Harvest Direct. Defendant further admitted that it took FabriClear Product that it had obtained in bulk through FabriClear, bottled the FabriClear Product, and labeled it as "X-Out." *Meeco Mfg. Co. v. Imperial Mfg. Grp.*, No. 03-CV-3061, 2005 WL 8172681, at *7 (W.D. Wash. July 7, 2005) (finding that the defendant engaged in reverse passing off when it "overlabeled" its remaining inventory of the plaintiff's products, which it had bought from the plaintiff, with its own private labels). Further, as Chief Judge Saylor noted in *The Hilsinger Co. v. Kleen Concepts, LLC*, 164 F. Supp. 3d 195 (D.Mass. 2016), where a plaintiff alleges literal falsity, as FabriClear has done here, a violation of the Lanham Act " 'may be established without evidence of consumer deception,' " *id*. at 200 (*quoting Cashmere & Camel Hair Mfrs. Institute v. Saks*

*Fifth Ave.,* 284 F.3d 302, 311 (1st Cir. 2002)). Accordingly, the Court grants summary judgment in FabriClear's favor as to Count V.

*Count VI – Unfair Competition under 93A*

For similar reasons, the Court finds for FabriClear as to Count VI for unfair competition under Mass. Gen. L. c. 93A, § 11. FabriClear's 93A claim is premised on the same theory as its federal Lanham Act claim. It alleges that, by continuing to misuse its confidential, proprietary, and trade secret information and by "palming off FabriClear Product as Harvest Direct's X-Out product," Harvest Direct has committed unfair and deceptive trade practices. Harvest Direct bases its dismissal argument on the non-existence of trade secret information or any false designation of origin. Because the Court has already rejected these arguments, summary judgment will also be granted as to Count VI.

## Conclusion

For the reasons stated above, FabriClear's Motion for Partial Summary Judgment as to Counts II, V and VI is granted.  (Docket No. 44).

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**SENIOR DISTRICT JUDGE**
